IN THE COURT OF APPEALS OF IOWA
No. 15-2204
Filed August 17, 2016

IN RE THE MARRIAGE OF MICHAEL WOOD
AND NARMINA WOOD

Upon the Petition of
MICHAEL WOOD,
        Petitioner-Appellant,

And Concerning
NARMINA WOOD,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Dallas County, Martha L. Mertz,

Judge.


        Father appeals the district court order modifying the visitation provisions in

the dissolution decree. **AFFIRMED.**


        Bradley P. Schroeder and Laura J. Lockwood of Hartung & Schroeder

L.L.P., Des Moines, for appellant.

        Mark R. Hinshaw of the Law Offices of Mark R. Hinshaw, West Des

Moines, for appellee.


        Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Narmina Wood and Michael Wood divorced in June 2013. The Woods had one child; they stipulated to joint custody, Michael having physical care, and Narmina having visitation. A little more than one year later, Michael filed a petition to modify the decree to limit Narmina's visitation. Narmina filed a counter application to modify visitation and support. The district court appointed a custody evaluator to review the custody arrangement. After the custody evaluation was completed, Michael dismissed his petition to modify the decree. Narmina did not dismiss her petition. The matter came on for trial, and the district court granted Narmina's petition and modified the decree to increase Narmina's visitation with the child. The district court left the amount of child support unchanged. Michael appeals, contending there has not been a change in circumstances allowing modification and contending the district court erred in failing to modify the support obligation.

Our review is de novo. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). We examine the entire record and adjudicate rights anew on the issues properly preserved and presented. *In re Marriage of Rierson*, 537 N.W.2d 806, 807 (Iowa Ct. App. 1995). We do give some deference to the decision of the district court where specific, non-generalized findings and conclusions have been made. *See In re P.C.*, No. 16-0893, slip op. at 4-5 (Iowa Ct. App. Aug. 17, 2016) (explaining we exercise "de novo review with deference," for reasons of "judicial comity and respect; recognition of the appellate court's limited function of maintaining the uniformity of legal doctrine; recognition of the district court's more intimate knowledge of and familiarity with the parties, the lawyers, and the facts

of a case; and recognition there are often undercurrents in a case—not of record and available for appellate review—the district court does and should take into account when making a decision").

The party seeking to modify visitation must show there has been a change in circumstances since the entry of the original decree. *See Donovan v. Donovan*, 212 N.W.2d 451, 453 (Iowa 1973); *see also Nicolou v. Clements*, 516 N.W.2d 905, 906 (Iowa Ct. App. 1994). The modification of visitation rights requires a less extensive change of circumstances when compared to a change in custody or physical care. *See Donovan*, 212 N.W.2d at 453; *In re Petition of Holub*, 584 N.W.2d 731, 733 (Iowa Ct. App. 1998). The court's focus is always the best interest of the child. *Nicolou*, 516 N.W.2d at 906.

We conclude Narmina met her burden in establishing a change in circumstances. We first note it was Michael who filed a petition to modify the parties' decree, contending there had been a material change in circumstances. Although he dismissed his petition, his current contention—that there has been no change in circumstances—is at odds with his prior position. *See Greenbriar Group, L.L.C. v. Haines*, 854 N.W.2d 46, 54 (Iowa Ct. App. 2014) (stating the doctrine of "preclusion of inconsistent positions prevents a party who has assumed a particular position in judicial proceedings" from reversing course to the prejudice of an adverse party). Second, we note the change in visitation is the addition of overnight hours every other Sunday, or thirteen hours every two weeks. The modification works a relatively minor change to reduce the number of transitions for the child as she enters school age. Setting aside these two points, Michael and his family feel wronged by Narmina's numerous extramarital

affairs precipitating the parties' divorce. He and his family have been hostile to Narmina since the entry of the decree. Michael had his father videotape each of the child exchanges. Michael's father, David, with Michael's knowledge, hired a private investigator to continually surveil Narmina. Michael's father sent Narmina harassing text messages and emails from an anonymous phone number and email address. The emails were copied to Narmina's supervisors at Wells Fargo, where David formerly was the CEO and where Michael is currently employed as an executive in the legal department. The communications were profane and racist. The communications revealed private information regarding Narmina, her medical information, and her personal matters. The communications also frequently threatened her with physical violence and wished her death. At trial, Michael admitted his father was behind the harassing communications. We agree with the district court's findings that the post-decretal relationship has been filled with tension. We have repeatedly held that post-dissolution hostility and the inability to communicate is sufficient to establish a substantial change in circumstances. *See, e.g., Huffman v. Huffman*, 176 N.W.2d 859, 863 (Iowa 1970) (taking into account grandfather's abusive conduct toward adulterous mother when considering whether modification of physical care was appropriate); *In re Marriage of Coon*, No. 14-1919, 2015 WL 5308976, at *2 (Iowa Ct. App. Sep. 10, 2015) (affirming modification where "the parents have become increasingly hostile to one another and cannot effectively communicate regarding the children"); *Mayes v. Hagen*, No. 09-1068, 2010 WL 625050, at *4 (Iowa Ct. App. Feb. 24, 2010) ("[W]e conclude the breakdown in communication was so complete that a substantial change of circumstances was proven."); *Melchiori v.*

*Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002) ("Discord between parents that has a disruptive effect on children's lives has been held to be a substantial change of circumstance that warrants a modification of the decree."); *In re Marriage of Crotty*, 584 N.W.2d 714, 716 (Iowa Ct. App. 1998) (stating Iowa courts do not tolerate hostility exhibited by the parents or their families).

The record also establishes increased visitation with Narmina is in the best interest of the child. Courts should award "liberal visitation . . . which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents." Iowa Code 598.41(1)(a) (2013). The modified decree increases the contact between the mother and the child. The modified decree reduces the number of transitions between the parents, thereby reducing the number of potential friction points between the parents and their families and reducing stress on the child. *See In re Marriage of Reisen*, No. 03-0129, 2003 WL 22700160, at *2 n.2 (Iowa Ct. App. Nov. 17, 2003) (taking into account the behavior of the grandparents and concluding "the behavior of the paternal grandparents is not in the best interests of these children"). While Michael has shown the ability to provide superior care, the relatively minor modification, involving only a single overnight every two weeks, does not deprive him of substantial time with the child that would be detrimental to the child. The custody evaluator, Dr. Kinnard, recommended to the parties that it would be in the child's best interests to reduce the number of transitions between the parents. This is particularly true as the child begins school. We thus conclude increased visitation is in the best interest of the child.

Michael contends the district court erred in not modifying Narmina's child support in accord with the evidence admitted at trial. In denying the request to modify child support, the district court stated that it did a "basic child support guideline calculation" and was not going to modify support. Under Iowa Code section 598.21C(1), a court may modify a child support order when the parent seeking modification is able to show "a substantial change in circumstances," including "[c]hanges in the employment, earning capacity, income, or resources of a party." Section 598.21C(2) provides "a substantial change of circumstances exists when the court order for child support varies by ten percent or more from the amount" that would be due under the child support guidelines. The district court may also consider whether the change in circumstances is permanent and not merely temporary. *In re Marriage of Vetternack,* 334 N.W.2d 761, 762 (Iowa 1983). The parent seeking modification must prove the change in circumstances by a preponderance of the evidence. *In re Marriage of Rietz,* 585 N.W.2d 226, 229 (Iowa 1998).

Narmina contends the issue is not properly before the court. We agree. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). "When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal." *Id.* The district court denied Narmina's petition to modify the child support provisions of the decree, and she has not appealed that issue. Michael voluntarily dismissed his petition to modify the decree. He has no pending claim

to increase the amount of child support. We thus affirm the district court on this issue. *See Carson Grain & Implement, Inc. v. Dirks*, 460 N.W.2d 483, 484 (Iowa Ct. App. 1990) (holding that claim was not preserved for appellate review where it was voluntarily dismissed in the district court).

Narmina requests appellate attorney fees. We have the discretion to award attorney's fees on appeal. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). When determining whether an award of appellate attorney fees is appropriate, we look to the requesting party's financial needs, the other party's ability to pay, and whether the requesting party was obligated to defend the trial court's ruling on appeal. *See id.* Both parties have the financial means to pay their respective attorney's fees. We decline to award fees in this case.

**AFFIRMED.**