Jake RUNYON, Appellee,

v.

KUBOTA TRACTOR CORPORATION,
Appellant.

No. 01–0711.

Supreme Court of Iowa.

Nov. 14, 2002.

Frank B. Harty, Mary E. Funk, and Thomas W. Foley of Nyemaster, Goode, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellant.

Paige Fiedler of Fiedler & Townsend, P.L.C., Johnston, for appellee.

NEUMAN, Justice.

This dispute is over a $3979 deduction taken from an employee's bonus check. The question is whether Iowa Code chapter 91A (1999), our wage payment collection law, governs the controversy and, if so, whether the deduction violated section 91A.5(2)(c), which prohibits deductions for "[l]osses due to ... default of customer credit."

The district court determined, as a matter of law, that chapter 91A applies to this dispute. So the factual debate over the nature and purpose of the deduction was submitted to the jury. But, relying on this court's holding in *Dallenbach v. Mapco Gas Products, Inc.*, 459 N.W.2d 483 (Iowa 1990), the court decided that in no event were liquidated damages recoverable by the employee.

The employer now appeals the judgment entered on the jury's verdict for the employee, and the employee cross-appeals on the liquidated damages issue. Finding no error warranting reversal, we affirm on both appeals and remand for an award of appellate attorney fees.

## I. Background Facts and Proceedings.

The pertinent facts are largely undisputed but the inferences to be drawn from them are hotly contested. Because this case was tried at law, "we view the evidence in the light most favorable to the party in whose favor the verdict was rendered." *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 593 (Iowa 1999). We are not bound, of course, by the district court's legal rulings. With these principles in mind, we turn to the record before us.

In 1977 the plaintiff, Jake Runyon, was hired by the defendant, Kubota Tractor Corporation, as a regional sales manager. Kubota, a California corporation, manufactures high-quality compact tractors.

Runyon, who resided in Des Moines when he was hired, was assigned to a territory covering Iowa, Nebraska, and northern Missouri. He moved to Missouri in 1982 but has retained responsibility for the performance of nine dealerships in Iowa. He regularly visits the dealerships, keeps in contact by telephone, and attends trade shows here.

Runyon's compensation package with Kubota includes a fixed annual salary, a guaranteed commission based on sales, and a discretionary "Management by Objective" (MBO) bonus. Roughly seventy percent of Runyon's commissions are based on sales in Missouri, with the remaining thirty percent resulting from sales to Nebraska and Iowa dealers. As a Missouri resident, Runyon files and pays his income taxes there.

Kubota's financial relationship with its dealers is pertinent to the parties' dispute over Runyon's bonus for 1999. Essentially, Kubota extends credit to its dealers to finance the cost of all tractors and inventory on hand at the dealerships. The dealer "owns" the products but is not required to advance the cost to Kubota until a customer makes a purchase. Once the dealer receives payment, it must pay Kubota the dealer cost. When a tractor is sold but the dealer either cannot or will not pay Kubota, the product is considered "sold out of trust" (SOT). Kubota regards SOTs as a serious threat to asset management and thus considers them when calculating bonuses due under its MBO compensation plan.

In January 2000, Kubota issued Runyon a check for his 1999 MBO bonus of $19,895. The record reveals that Runyon would have been entitled to a bonus of $26,526 but for two deductions, only one of which is at issue here. Not in controversy is a reduction of $2653 for Runyon's low market share in the sale of small-horsepower tractors. At issue is a $3979 deduction for four SOTs occurring at dealerships in Iowa and Missouri. The sum represents a fifteen percent reduction in the bonus to which Runyon would have otherwise been entitled.

Runyon sued Kubota for breach of contract and violation of the Iowa Wage Payment Collection Law, Iowa Code chapter 91A. Following discovery, he dismissed his breach of contract claim. By motion for summary judgment, and again at trial, Kubota asserted that it was not an "employer" and Runyon was not an "employee" as those terms are defined in section 91A.2. The district court rejected the argument, holding the statute applied to the issue in controversy. The court further held, over Kubota's objection, that a jury question existed as to whether its deduction for SOTs in Runyon's territory stemmed from "[l]osses due to ... default of customer credit," a deduction prohibited by section 91A.5(2)(c). The jury found in Runyon's favor on this point and the court rendered judgment against Kubota for $3979 plus attorney fees and costs totaling $30,004.64. This appeal by Kubota, and cross-appeal by Runyon followed.

Further facts will be detailed as they pertain to the issues on appeal.

## II. Issues on Appeal.

■ *A. Constitutional claim.* At the outset Kubota claims the court committed an error of constitutional magnitude when it applied chapter 91A to "non-Iowa employers, such as Kubota, and non-Iowa employees, such as Plaintiff." Kubota fails to mention, however, how or where this constitutional claim was raised in the trial court. *See* Iowa R.App. P. 6.14(1)(f) (requiring reference in the brief to "how the issue was preserved for review ... [and] places in the record where the issue was raised and decided"). Although Kubota's and Runyon's status as persons governed by chapter 91A is an important statutory issue on appeal, the record convinces us that Kubota's constitutional challenge has not been preserved for our review. We deem the issue waived and, accordingly, give it no further consideration. *See Martin v. Raytheon Co.*, 497 N.W.2d 818, 820

(Iowa 1993) (constitutional arguments waived if not urged in trial court).

**B. Applicability of Iowa's Wage Payment Collection Law.** The real question is whether Runyon is entitled to the protection and enforcement of Iowa Code chapter 91A. Kubota asserts that "[p]laintiff is not a statutory 'employee' and Kubota is not a statutory 'employer' under the Wage Payment Collection [Law]." Its argument rests on the straightforward assertion that "[s]urely the legislature did not intend for the Act to apply to employees when the employer is not located in Iowa, the employee does not reside in Iowa, and the employee is not paid in Iowa." Runyon counters that the governing statute, section 91A.2, renders irrelevant the criteria cited by Kubota. He frames the question this way: "Did the Iowa Legislature intend for employees who were hired in Iowa and required by their employers to work in Iowa on a regular, ongoing, and substantial basis to be unprotected by the Wage Payment Collection Law?"

Like the district court, we are convinced that Runyon has the better argument. We have observed that the purpose of chapter 91A is to "facilitate collection of wages by employees." *Condon Auto Sales,* 604 N.W.2d at 596. A bonus meets the statutory definition of "wages." *Dallenbach,* 459 N.W.2d at 488. The statute defines "employee" as "a natural person who is employed in this state for wages by an employer." Iowa Code § 91A.2(3). An "employer" under the statute means a person or entity "who in this state employs for wages a natural person." *Id.* § 91A.2(4).

Kubota contends that the phrase "in this state" in the foregoing definitions narrows the persons to whom the statute applies. We agree that the legislature evidently intended not to extend the statute's reach to persons not employed in the state of Iowa. *See Henriksen v. Younglove Constr.,* 540 N.W.2d 254, 260 (Iowa 1995) (intent must be discerned from legislative words). But it seems equally clear to us that the phrase "in this state" modifies the term "employed," not, as Kubota suggests, the words "employee" and "employer." In other words, the statute's focus is not on an individual employee's state of residence or an employer's home office but whether the employee is "employed in this state for wages by an employer." Iowa Code § 91A.2(3); *see also id.* § 91A.2(4) (employer is one who "in this state employs for wages a natural person").

The word "employ" is not defined in chapter 91A. So in discerning legislative intent we give the word its ordinary meaning. *State ex rel. Miller v. Midwest Pork, L.C.,* 625 N.W.2d 694, 699 (Iowa 2001). "Employ" is commonly defined as follows:

> To engage in one's service; to hire; to use as an agent or substitute in transacting business; to commission and intrust with the performance of certain acts or functions or with the management of one's affairs; ... the term is equivalent to hiring, which implies a request and a contract for a compensation. To make use of, to keep at work, to entrust with some duty.

Black's Law Dictionary 362 (abridged 6th ed.1991). *See also Muller v. Hotsy Corp.,* 917 F.Supp. 1389, 1422 (N.D.Iowa 1996) (applying "plain language" of section 91A.2(3), court held plaintiff was not an "employee" for purposes of compelling access to his personnel file under chapter 91B because he was no longer "employed in this state by an employer").

As the common definition of "employ" reveals, neither the residence of the employee nor the location of the employer controls. Neither does chapter 91A condition its application on such criteria. The statutory term implies only the actual engagement of services in the transaction of business. Here, while Runyon did work out of his home in Missouri, the record reveals he transacted substantial business and routinely performed services on behalf of Kubota within Iowa's borders. Because Runyon's dispute with Kubota involved employment-related services rendered in Iowa for wages, the district court committed no error in applying the Iowa Wage Payment Collection Law.

### ■ C. Sufficiency of the evidence.

Kubota next argues the evidence was insufficient to support Runyon's claim that the company violated chapter 91A by failing to pay his bonus when it was "due." See Iowa Code § 91A.3(1) ("employer shall pay all wages due its employees"). Kubota insists it timely paid Runyon the bonus to which he was "due" under the MBO compensation plan. Runyon counters that Kubota has missed the point of his claim. While conceding his bonus check was timely delivered, he claims it included an unlawful deduction. Therefore, he argues, he did not receive all he was "due" and is entitled to recover the difference in accordance with section 91A.8. Again, Runyon has the more persuasive argument.

Kubota rightly notes that in *Dallenbach* we suggested that a bonus cannot be "due"—as that term is used in section 91A.3(1)—until it can be accurately estimated in accordance with the parties' agreement. *Dallenbach*, 459 N.W.2d at 489. We have likewise held that a bonus is not "due" if an employee fails to meet the eligibility requirements for the pay out. *Phipps v. IASD Health Servs. Corp.*, 558

N.W.2d 198, 202 (Iowa 1997). Here, however, the issue is quite different. Runyon claims his bonus "due" included the $3979 deducted for SOTs. That brings us to the governing statute in the case and the parties' factual dispute over its application.

Iowa Code section 91A.5, captioned "Deductions from wages," states that the following "shall not be deducted from an employee's wages":

> *Losses due to* breakage, damage to property, *default of customer credit, or nonpayment for goods* or services rendered so long as such losses are not attributable to the employee's willful or intentional disregard of the employer's interests.

Iowa Code § 91A.5(2)(c) (emphasis added).

Kubota argued forcefully at trial, and urges on appeal, that the deduction taken from Runyon's bonus was not based on "losses" sustained by Kubota but on Runyon's failure to conduct required audits of his dealers' accounts, a failure that permitted the SOTs to occur. Runyon countered this testimony with proof that SOTs stem, in fact, from "default in customer credit" which, in this case, led to losses sustained by Kubota. The factual dispute centered on whether the sum deducted from Runyon's bonus, although not directly tied to a specific loss, was nevertheless intended by Kubota to penalize Runyon for SOTs occurring in Iowa dealerships during 1999.

Given this record, the district court determined that a jury question was engendered concerning Kubota's alleged violation of section 91A.5(2)(c). We find no error in this determination. The case is analogous to *Salter v. Freight Sales Co.*, 357 N.W.2d 38 (Iowa Ct.App.1984). In *Salter*, an employer reduced the commission paid the manager of its furniture store following a burglary that occurred at the store. After some months, the former commission rate was restored. *Salter*, 357

N.W.2d at 40. In the suit for unpaid wages that followed, the employer argued the reduced commission "was a valid modification of [the] contract which [the manager] chose to accept by continuing in defendant's employ." *Id.* at 41. A skeptical district court rejected the argument, a decision affirmed on appeal. Reasoning the trial court was right to "disregard the name given to the transaction and look at its substance," our court of appeals upheld the district court's finding that substantial evidence supported the employee's claim that his wages had been effectively reduced by the amount of the burglary loss in violation of section 91A.5(2)(c). *Id.* at 41–42.

Just as in *Salter*, the trial court here looked beyond mere semantics to determine that section 91A.5(2)(c) was implicated and left it to the jury to sort out the conflict in the evidence. Moreover we reject Kubota's contention that the jury instructions, as given, necessarily directed a verdict in Runyon's favor. The court began by summarizing the law this way:

> The Iowa Wage Payment Collection Law provides an employer shall pay wages to an employee. A bonus is a wage. Employers shall not deduct from an employee's wages losses due to default of customer credit or nonpayment for goods or services.

The court then gave the following marshalling instruction:

> In order to recover, Plaintiff Jake Runyon must prove both of the following elements:
>
> 1. In January 2000, the defendant made a deduction from Plaintiff's 1999 MBO bonus; and
> 2. The deduction was for losses due to default of customer credit or nonpayment for goods and services. If the Plaintiff has proved both of these propositions, he is entitled to recover wages in

the amount of $3979.00. If the Plaintiff has failed to prove both of these propositions, he is not entitled to recover.

Although Kubota claims the court's instructions erroneously omitted the necessary element of "wages due" highlighted in *Phipps* and *Dallenbach,* we have already explained that this case is distinguishable from those two cases. The question to be determined was whether the deduction made by Kubota was allowable under section 91A.5(2)(c). Kubota cannot escape the application of the law by asserting that, no matter what the calculation, it paid the bonus when it was due and thus abided by chapter 91A. The assignment of error is without merit.

■ **D. Liquidated damages.** Runyon asserts on cross-appeal that the district court erred when it refused to direct a verdict, or submit a jury instruction, on the question of his entitlement to liquidated damages. The governing statute is Iowa Code section 91A.8. It provides:

> When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. In other instances the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.

588

Iowa Code § 91A.8. Because Kubota's deduction from Runyon's bonus was plainly intentional, not mistaken, Runyon argues the court erred when it refused to award the liquidated damages authorized by section 91A.8. In support of the district court's ruling, Kubota contends the decision is controlled by the *Dallenbach* case. We agree.

In *Dallenbach* this court held that a wage dispute involving a bonus comes within the "other instances" category of section 91A.8, thus entitling the employee to recover the unpaid bonus and attorney fees but not liquidated damages. *Dallenbach*, 459 N.W.2d at 489. We reasoned that section 91A.8 limits the recovery of liquidated damages to unpaid wages as defined by section 91A.3, that is, "wages due ... in monthly, semimonthly, or biweekly installments on regular paydays." *Id.* A bonus, we concluded, does not commonly fit that definition. *Id.* As already noted, however, *Dallenbach* held a bonus does fit the section 91A.2 definition of "wages" so as to entitle the employee to recover not only the unpaid bonus but the costs and reasonable attorney fees expended to secure it. *Id.* at 488; Iowa Code § 91A.2(7) ("wages" means compensation owed by an employer for labor or service rendered by an employee).

The district court properly applied the statutes here consistent with our holding in *Dallenbach.* We are not inclined, as Runyon urges, to reverse *Dallenbach* because the parties' dispute over the bonus here alleged an unlawful deduction. Based on the language in the pertinent statutes, we still believe the legislature intended to reserve the liquidated damages provision of section 91A.8 for situations involving the intentional withholding of regular paychecks and commissions, rather than for disputes over the calculation of discretionary bonuses payable at year-end.

**III. Conclusion.**

We affirm the judgment entered upon the jury's verdict in favor of Runyon and against Kubota for $3979 plus $30,004.64 in related attorney fees and litigation expense plus interest. We likewise affirm the district court's denial of Runyon's claim for liquidated damages.

■ Under Iowa Code section 91A.8, Runyon is entitled to a further award of "usual and necessary" attorney fees and costs expended in defending this appeal. *Salter,* 357 N.W.2d at 43. We therefore remand to the district court for a hearing on that matter.

Court costs on this appeal shall be taxed equally to the parties.

**AFFIRMED ON APPEAL AND CROSS APPEAL AND REMANDED.**

All justices concur except CARTER, TERNUS, and CADY, JJ., who concur specially.

CADY, Justice (concurring specially).

I concur in the result, but write separately to address two issues not raised by the parties that could be important in properly confining the application and scope of the Iowa Wage Payment Collection Law.

First, this is not the type of case in which Iowa courts traditionally use its law to resolve. The plaintiff is a nonresident. The defendant is a nonresident. The dispute involved wages payable in another state. Under such circumstances, the choice of law doctrine would generally temper our enthusiasm to apply our law and direct us to consider the law of the state in which the parties reside.

Second, the wage dispute in this case was lumped into a single claim, but actually involved four separate employment ac-

tivities. The majority of these activities occurred in Missouri, and only one occurred in Iowa. Although our legislature may have a strong interest to enact a wage dispute law to protect nonresidents when they cross our border to perform work in Iowa, it would have no interest in protecting nonresidents in those instances where they perform work outside of Iowa. *See Killian v. McCulloch*, 873 F.Supp. 938, 942 (E.D.Pa.1995) ("The legislature has a strong interest in enacting legislation to protect those who work in the Commonwealth, but has almost no interest in extending that protection to those who work outside Pennsylvania."). Consequently, I would hold that a wage claim involving out-of-state parties should be limited to those specific disputes that involve work performed in Iowa, and exclude those disputes involving work performed outside Iowa. We have no business extending the protections of our law in favor of one nonresident against another nonresident involving disputes occurring outside Iowa. Moreover, the fact that one of the individual disputes in this case involved wages earned in Iowa would not transform the other disputes involving wages earned in Missouri into an Iowa dispute.

CARTER, and TERNUS, JJ., join this special concurrence.